UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 10-23131-CIV-LENARD/O'SULLIVAN

RAUL FAGUNDEZ,

    Plaintiff,

v.

LOUISVILLE LADDER, INC.,

    Defendant.
_____/

## ORDER

THIS MATTER came before the Court on Louisville Ladder's Motion to Exclude Opinion Testimony of John Schwartzberg (DE# 86, 5/12/11), the defendant's Memorandum in Support of Motion to Exclude Opinion Testimony of John Schwartzberg (DE# 86-1, 5/12/11); Louisville Ladder's Motion to Exclude Opinion Testimony of Oren Masory (DE# 94, 6/2/11); and the defendant's Memorandum in Support of Motion to Exclude Opinion Testimony of Oren Masory (DE# 94-1, 6/2/11).  The parties filed their respective responses and replies and the motions are ripe for disposition. These matters were referred to the undersigned by the Honorable Joan A. Lenard. (DE# 135, 10/24/11)  Having carefully reviewed the applicable filings and law, for the reasons stated below, it is

ORDERED AND ADJUDGED that

1.    Louisville Ladder's Motion to Exclude Opinion Testimony of John Schwartzberg (DE# 86, 5/12/11), is DENIED.

2.    Louisville Ladder's Motion to Exclude Opinion Testimony of Oren Masory (DE# 94, 6/2/11) is DENIED.

**I.    LEGAL STANDARDS**

Under Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589 (1993), and Rule 702 of

the Federal Rules of Evidence, the Court serves as a gatekeeper to the admission of scientific evidence.  Quiet Technology DC-8 v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1340 (11th Cir. 2003) (citing Daubert, 509 U.S. 579, 589 (1993); and McCorvey v. Baxter Healthcare Corp., 298 F.3d 1253, 1256 (11th Cir. 2002)); Rink v. Cheminova, 400 F.3d 1286, 1291 (11th Cir. 2005).  To determine the admissibility of expert testimony under Rule 702, the Court must undertake the following three-part inquiry:

> (1) [T]he expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated by Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand evidence or to determine a fact in issue.

Quiet Technology, 326 F.3d at 1340-41 (citing City of Tuscaloosa v. Harcros Chems., Inc., 158 F.3d 548, 562 (11th Cir. 1998) (citing Daubert, 509 U.S. at 589) (other citation omitted).  The Eleventh Circuit cautioned that although some overlap among the inquiries regarding expert qualifications, reliability and helpfulness exist, "these are distinct concepts that courts and litigants must take care not to conflate." Id. at 1341.

> To determine reliability, the court considers:
>
> (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known and potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community.

Id. (citing McCorvey, 298 F.3d at 1256 (citing Daubert, 509 U.S. at 593-94)).  "'A district court's gatekeeper role 'is not intended to supplant the adversary system or the role of the jury.'" Id. (citing Maiz v. Virani, 253 F.3d 641, 666 (11th Cir. 2001) (quoting Allison v. McGhan, 184 F.3d 1300, 1311 (11th Cir. 1999)).  "Quite the contrary, '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" Id. (quoting Daubert, 509 U.S.

2

at 596).

"The real purpose of a motion *in limine* is to give the trial judge notice of the movant's position so as to avoid the introduction of damaging evidence which may irretrievably affect fairness of the trial.  A court has the power to exclude evidence in limine only when evidence is clearly inadmissible on all potential grounds." Stewart v. Hooters of America, Inc., No. 8:04-CV-40-T-17-MAP, 2007 WL 1752843, *1 (M.D. Fla. 2007) (citing Luce v. United States, 469 U.S. 38, 41 (1984)).  District courts have broad discretion in deciding to admit or exclude expert testimony.  Gen. Elec. Co. v. Joiner, 522 U.S. 136, 142 (1997).

## II. ANALYSIS

### A. Motions in Limine to Exclude Expert Testimony

#### 1. Defendant's Motion to Exclude Expert Testimony of John Schwartzberg

The defendant seeks to exclude the testimony of the plaintiff's metallurgical engineer, John Schwartzberg, on the ground that he failed to use any reliable engineering methods on which to base his "rivet failure" opinion.  Mr. Schwartzberg asserts that "one of the six rivets adjoining the top cap to the right front side rail failed, resulting in instability of the ladder while in use." Def.'s Motion p. 1 (DE# 86-1, 5/12/11); see Schwartzberg's Report p. 1.  The allegedly failed rivet was never found and defendant argues that Mr. Schwartzberg "performed no tests on any exemplar rivets, never calculated or measured the forces necessary to break a rivet, and neglected to identify or take into account the steel from which the rivet was manufactured." Id.

The defendant argues that Mr. Schwartzberg's Rule 26 report fails the reliability and admissibility tests established in Daubert and reflected in the three prongs of Rule 702.  The defendant further argues that "Schwartzberg's decision not to analyze, test or evaluate identical rivets furnished by Louisville Ladder is a fundamental deficiency." Def.'s Motion p. 8 (DE# 86-1,

3

5/12/11).  Additionally, the defendant argues that Mr."Schwartzberg's report contains no data or calculations quantifying any of the loads or forces imposed on the ladder during use." Mr. Schwartzberg's report "relies solely on dimensional measurements – to four decimal points, no less – of the 'side rail-to-top cap riveted joints' and of 'gaps between rivets and joined members.'" Id. (citing to ¶ 17 of Schwartzberg's report). Relying upon the review of one of Mr. Schwartzberg's professors, the defendant argues that merely measuring the size of a ladder's rivets is useless if the ladder loads are unquantified, the rivet material unspecified, and the failure theory untested. Id. Ex. C. Letter of George Krauss and his CV attached to Def.'s Motion (DE# 86, 5/12/11).

      The defendant challenges the reliability of Mr. Schwartzberg's opinion because the rivet exemplars were not tested. Also, the defendant contends that Mr. Schwartzberg's report is suspect as generated solely for litigation.  Additionally, the defendant argues that his report lacks a reproducible methodology for assessing ability of the rivets in an L-2311-06S stepladder because his report does not describe the job the rivets are expected to perform.

      The plaintiff maintains that the methodology by which Mr. Schwartzberg's reaches his conclusion is sufficiently reliable, that his opinions are based upon scientific facts and data; and that he utilized reliable principles and methods which have been reliably applied to the facts of this case.  Pl.'s Response p. 7 (DE# 89, 5/26/11).  Mr. Schwartzberg's report reveals that he knew that the rivet was made out of steel and that he undertook a dimensional analysis of all remaining rivets (57) and determined that 13 of the rivets had been miss struck.  The plaintiff argues that Mr. Schwartzberg did not measure the tensile strength of the rivet because the technical specifications of the rivet are well recognized in the engineering field and there would be no appreciable utility. See Schmude v. Tricam Industries, Inc., 550 F. Supp. 2d 846, 852 (E.D. Wis. 2008) (finding that "the defect, by its very nature, did not lend itself to the kind of

4

empirical testing Daubert envisioned for opinions that are based on cutting edge science"); see Kamp v. FMC Corp., 241 F. Supp. 2d 760, 763-764 (E.D. Mich. 2002) (testing not necessarily required where expert relies on professional experience and conducts physical examination).

In Schmude, in rejecting the defendant's argument that the plaintiff's expert should not have been allowed to testify at trial and conduct a demonstration of the ladder's failure in trial, the court explained that "this case is based upon a disarmingly simple theory: that the plaintiff was injured when the ladder on which he was standing failed due to a manufacturing defect in the rivet that fastened one of the rear legs of the ladder to the cap." Id. at 851. In Schmude, the defendant claimed that the trial court erred in allowing a ladder demonstration in court on the ground that it was not rigorously tested, peer reviewed, and fully disclosed before trial. Id. The court found that "neither Daubert, nor Rule 26, were intended to provide the kind of shield that [the defendant] has attempted to erect upon them." Id. In Schmude, the court explained that the "the issue was not, as [the defendant] suggested in its motion in limine, the strength of the metal used to manufacture the rivet. The plaintiff's theory was that the rivet failed because it was misaligned and had not fully passed through the assembly when it was struck." Id. The court concluded that "this was a case in which the adversarial process was fully able to explain alternatives to the jury without the possibility that the jury would be swayed by unscientific principles or improper testimony. The theory that a stepladder may collapse if the rivet fastening one of the legs to the cap fails is not 'rocket science.'" Id. at 853.

The undersigned finds the reasoning of Schmude to be persuasive despite the factual difference that the defendant conceded the defect in that case and the cap of the ladder separated. Like Schmude, the plaintiff's theory is simple and straightforward. In the present case, the plaintiff's expert identified Federal Standards that apply to ladder construction; examined the accident ladder, reviewed the testimony of eyewitnesses, formed an opinion

describing the condition of the ladder and the extent to which the ladder complied with relevant Federal Standards at the time it was produced. See Bagley v. Home Depot U.S.A., Inc., No. 3:10-cv-00109-J-JBT, 2011 WL 1884146, * 5 (M.D. Fla. 2011) (failure to conduct "kick-the-bar scenario" did not preclude testimony of expert who examined physical evidence including accident ladder because it went to the weight of the evidence not the admissibility)(citing Thompson v. Tricam Indus., Inc., 2007 WL 4800354, *1 (M.D. Fla. Nov. 30, 2007)(stating that although expert "did not do any exemplar testing," his opinion was admissible since he "examined the ladder, applied ANSI standards, and took measurements of the ladder and statements from Plaintiffs"); Czarnecki v. Home Depot U.S.A., Inc., 2009 WL 1560194, * 6 (E.D. Pa. June 3, 2009) (finding the expert's methodology sufficiently reliable where the expert's report was based on his first-hand observation of the ladder, review of all of the documents related to the accident, including police and medical reports, pleadings and depositions, photos of the ladder and accident scene, and material related to the recall of other Krause ladders, and his testing of a similar Krause ladder multiple times)).  Mr. Schwartzberg applied his engineering knowledge and the specific expertise he has developed in forensic engineering to the facts in this case.  The undersigned finds that Mr. Schwartzberg is sufficiently qualified to help the trier of fact understand the evidence.  Accordingly, the motion to exclude Mr. Schwartzberg's opinion and report is DENIED.

      2.    Defendant's Motion to Exclude Expert Testimony of Dr. Oren Masory

The defendant seeks to exclude the testimony of Dr. Oren Masory because he neither calculated nor tested the "concentration of forces." Def.'s Motion p. 1. Dr. Masory's opines that the improperly sized and improperly peened rivets caused the plaintiff's injury. Pl.'s Response p. 1 (DE# 106, 6/16/11). The defendant argues that the single test, an ANSI racking test on the damaged ladder with a missing rivet, produced results that reveal that the ladder meets ANSI's

requirements and thus, disproves the plaintiff's theory.  Def.'s Reply p. 4 (DE# 111, 6/27/11); See Quiet Technology DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1345 (11th Cir. 2003) ("The identification of such flaws in generally reliable scientific evidence is precisely the role of cross-examination") (citing Daubert, 509 U.S. at 596).  "'In most cases, objections to the inadequacies of a study are more appropriately considered an objection going to the weight of the evidence rather than its admissibility.'" Id. (quoting Hemmings v. Tidyman's Inc., 1174, 1188 (9th Cir. 2002)).

>Rule 702 provides in pertinent part that:

>If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.  See Quiet Technology DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1340-41 (11th Cir. 2003).

Additionally, the defendant relies on two decisions in which Dr. Masory's testimony was excluded. See Ainsworth v. KLI, Inc., 967 So. 2d 296 (Fla. 4th DCA 2007) and Order in *John Stephens v. Louisville Ladder, Inc.,* No. 8:06-cv-2299 (M.D. Fla. 3/25/08) (attached as Ex. E to Def.'s Motion) (DE# 94-6, 6/2/11).  Neither controls here.  In the state court decision, the testimony of the plaintiff's three experts were excluded because "'...the facts of this case don't really match up with the facts that would be the basis for their opinion.'" Ainsworth, 967 So. 2d at 300 (quoting the trial court).  In Ainsworth, "Masory testified that he reached the conclusion that Type II racking or torsional instability was the cause of Ainsworth's accident not based so much on Ainsworth's account of events, but because he eliminated any static failure of the ladder as a cause of the accident so that some unknown type of dynamic failure, potentially

Type II racking or torsional instability, was likely the cause of Ainsworth's fall." Id. at 298. Here, there is no challenge that the facts on which Dr. Masory bases his opinion conflict with the witness accounts. Thus, Ainsworth is factually distinguishable and inapposite.

In the federal court Order in Stephens, the Order does not contain any reasoning for excluding Dr. Masory's opinion. Instead, the Order refers to "the reasons stated on the record." Order in John Stephens v. Louisville Ladder, Inc., No. 8:06-cv-2299 (M.D. Fla. Mar. 25, 2008) (attached as Ex. E to Def.'s Motion) (DE# 94-6, 6/2/11). In the defendant's motion in Stephens, the defendant sought exclusion of Dr. Masory's testimony on the ground that he did not examine the lost accident ladder and did not have any facts to support his opinion that the wooden ladder failed.

The Order in Stephens is factually distinguishable. In the present case, Dr. Masory inspected the accident ladder and relied on the testimony of the plaintiff and one eyewitness. There is no conflict in the version of facts on which Dr. Masory bases his opinion. Rather, the defendant complains that Dr. Masory failed to test the accident ladder or any exemplars and "neither calculated nor tested this 'concentration of forces.'" Defs.' Memorandum in Support of Motion to Exclude Opinion Testimony of Oren Masory (DE# 94-1, 6/2/11).

In the present action, Dr. Masory's report reflects that he examined the accident ladder, analyzed the design of the accident ladder, identified relevant standards such as ANSI and ASME for the production of ladders and ladder components, assessed the ladder design in the context of all relevant standards, and examined and conducted a racking test on an exemplar ladder to ascertain whether there was a causal connection between the ladder's defective rivets and its failure. Dr. Masory's rivet analysis compares his rivet measurements on the accident ladder to the specifications for rivets and indicates non-compliance in the accident ladder. See Section 7 of Dr. Masory's Report (DE# 94-2, 6/2/11); Pl.'s Response at 5-6 (DE# 106; 6/16/11).

Where, as here, the expert's opinion is based on his review and inspection of the ladder, eyewitness testimony, the defendant's drawings, specifications and test results, the expert's failure to conduct his own tests does not warrant exclusion of his testimony.   See Bagley v. Home Depot U.S.A., Inc., No. 3:10-cv-00109-J-JBT, 2011 WL 1884146, * 5 (M.D. Fla. 2011); Thompson v. Tricam Indus., Inc., 2007 WL 4800354, *1 (M.D. Fla. Nov. 30, 2007); and Czarnecki v. Home Depot U.S.A., Inc., 2009 WL 1560194, * 6 (E.D. Pa. June 3, 2009).

The undersigned finds that Dr. Masory's Report satisfies Fed. R. Civ. P. 26, Daubert, and Fed. R. Evid. 702. As the Supreme Court recognized in Daubert, '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" Daubert, 509 U.S. at 596.  Thus, the Louisville Ladder's Motion to Exclude Opinion Testimony of Oren Masory (DE# 94, 6/2/11) is DENIED.

DONE AND ORDERED, in Chambers, at Miami, Florida this **22nd** day of December, 2011.

_____
JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies provided to:
United States District Judge Lenard
All counsel of record